ZIPPERLE v. HEINZERLING OIL CORPO-
RATION.   (No. 2525.)

(Court of Civil Appeals of Texas. Amarillo.
June 17, 1925.   Rehearing Denied
July 1, 1925.)

1. Appeal and error ⬤⟹719(6)—Giving of per-
emptory instruction, if erroneous, is funda-
mental error, not requiring assignment.

Giving of peremptory instruction, if errone-
ous, is fundamental error, not requiring assign-
ment of error.

2. Mines and minerals ⬤⟹78(7)—Peremptory
instruction on question whether lessee's acts
constituted breach of lease terminating it
within meaning of lease held error.

Peremptory instruction for defendant as-
signee of lease, on question whether his acts
constituted breach of lease terminating it with-
in meaning of lease *held* error; there being evi-
dence requiring submission of the question to
the jury.

Appeal from District Court, Wilbarger
County; J. V. Leak, Judge.

Action by Carl Zipperle against the Hein-
zerling Oil Corporation.   Judgment for de-
fendant, and plaintiff appeals.   Reversed and
remanded.

Cook, Cook & Cole and Bonner & Storey,
all of Vernon, for appellant.

Berry, Stokes & Killough, of Vernon, and
Carrigan, Montgomery, Britain, Morgan &
King, of Wichita Falls, for appellee.

JACKSON, J.   This suit was instituted in
the district court of Wilbarger county, Tex.,
by Carl Zipperle, appellant, against the Hein-
zerling Oil Corporation, appellee.

Appellant sued to cancel an oil and gas
lease on certain land that he owned on Jan-
uary 24, 1924, and had on said date by writ-
ten contract leased and let for oil and gas
purposes, which thereafter had been by the
lessee assigned to appellee.

Appellant alleges that at the time of the
lease a well had been drilled to the approxi-
mate depth of 2,000 feet exploring the land
for oil and gas, and in the vicinity of said
land there had been discovered oil and gas
producing sands at the respective depths
of 1,200, 1,900, 2,174, and 2,700 feet, but
no oil or gas in paying quantities had been
found in the well which had been drilled
on the lease in question, and that for the
sole purpose of having the well drilled to
a depth of 2,174 feet to the Castleberry sand,
unless oil or gas was found at a lesser depth,
and, if not found at that depth, then to have
said well drilled to a depth of 2,700 feet, un-
less oil and gas was found at a lesser depth,
and it was the express condition of the lease
that drilling should be resumed on said well
on or before February 6, 1924, and prosecuted
with reasonable diligence until completed,
and, should drilling not be resumed on that
date and prosecuted with reasonable dili-
gence, the lease should terminate as to both
parties, unless he was on or before that date
paid the sum of $240 as a rental to cover the
privilege of deferring the commencement of a
well for 12 months from said date; that ap-
pellant acquired the lease with full notice of,
and subject to, all the provisions thereof, and
it had failed to comply with the terms and
conditions of said lease and breached the con-
tract, failed to pay the rental or resume drill-
ing and prosecute the same with reasonable
diligence, had abandoned said well, and un-
dertook to clandestinely transfer the lease to
innocent parties, for which reasons he asks
that the lease be canceled and the cloud cast
on his title by said lease be removed.

He attached to his petition the lease con-
tract, the provisions of which, material to a
disposition of this case, are as follows:

"If drilling on the well now located on said
land is not resumed on said land on or before
the 6th day of February, 1924, and prosecuted
same with reasonable diligence, this lease shall
terminate as to both parties, unless the lessee,
on or before that date, shall pay or tender to
the lessor, * * * the sum of $240.00, which
shall operate as a rental and cover the privilege
of deferring the commencement of a well for 12
months from said date.

"Should the first well drilled on the above-
described land be a dry hole, then and in that
event, if a second well is not commenced on
said land within 12 months thereafter, this lease
shall terminate as to both parties, unless the
lessee, on or before the expiration of said 12
months shall resume the payment of rentals in
the same amount and in the same manner as
hereinbefore provided."

Appellee answered by general demurrer
and general denial, and pleaded specially
that on January 24, 1924, and prior thereto,
it had commenced and drilled the well in con-
troversy to an approximate depth of 2,000
feet, and became involved in a controversy
with the appellant as to the validity of the
lease under which it was operating, and in
compromise and settlement of the contro-
versy appellant released 80 acres of the
land covered by the original lease in con-
sideration of the new lease covering the
land in controversy, in consideration of
which the new lease was executed, and it
acquired the leasehold rights thereunder,
whereupon in good faith prior to February
6, 1924, it resumed the drilling of the well
theretofore commenced, and prosecuted the
drilling with reasonable diligence until it
reached the Castleberry sand at approximate-
ly 2,168 feet, and that on account of the
structure certain accidents, and mishaps un-
avoidable, the derrick used in connection
with the drilling of the well was pulled
down four times, the casing collapsed, and
the drilling tools were lost in connection with

⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the continued drilling, which resulted in unavoidable delay and great expense, and under the circumstances it made reasonable progress in drilling to the depth of 2,168 feet where the Castleberry sand was encountered and found no production, and at that time appellant, who knew the difficulties and expense which it had encountered, expressed himself as entirely satisfied with the progress of the drilling.

Appellee further pleads that at the time it ceased drilling on said well, about October 1, 1924, it contemplated procuring a second well to be drilled on the leasehold, and that on October 10, 1924, the date on which this suit was filed, it was engaged in negotiations to secure the drilling of a second well, and did procure an agreement from a responsible producer to drill a second well and explore the lease for oil and gas, and, while engaged in the act of removing the casing from the first well, appellant filed this suit; that it had performed in good faith its obligations under the terms of the lease, and was still willing to carry out and perform all the terms and provisions of the lease.

At the conclusion of the testimony offered by appellant the court peremptorily instructed the jury to find for the appellee, which they did, and judgment was entered accordingly, from which this appeal is prosecuted.

[1] Appellant, in his brief, has no assignments of error, but, as giving a peremptory instruction is considered as fundamental error, we will review the proposition urged by appellant challenging the action of the trial court in giving a peremptory instruction; appellant contending that the evidence was sufficient to raise an issue to be submitted to the jury for its determination.

[2] It is admitted that the rental of $240 was not paid. There is no controversy but that drilling was resumed on the well on or before February 6, 1924. The testimony tends to show that the well was drilled to an additional depth of 168 feet in a period of 8 months; that in the drilling some trouble was encountered with the derrick, the casing, and losing the tools, but there is no testimony as to the amount of time that was lost by these mishaps.

The testimony further tends to show that appellant was very insistent on the work being prosecuted with reasonable diligence, and his complaints were several times brought to the notice of appellee; that Mr. Castleberry was the agent and representative of appellee, and in a conference with appellant's attorney shortly before suit was filed Castleberry advised the attorney that the company had done all it was going to do; that he was going to pull the casing out of the well, and resell it, and pay himself an obligation of $2,500 which he had advanced to the company; that it was useless to seek any further contributions from the stockholders; that they would not contribute anything; that Heinzerling had sold the lease for $30,000, and, if something was not done, he would pocket the money, and that would be the last that was heard of it, and that the attorney had just as well go ahead with the suit; that a conference was to be had, and the attorney advised later what conclusion had been reached by the parties representing the appellee; that thereafter on the same evening the attorney was advised to go ahead with the suit.

The appellee offered no testimony in explanation of the delay, offered no explanation of the statements of Castleberry, without which there are quite a few circumstances in the record tending to support appellant's contention, and, without reciting the evidence further in detail, it is our opinion that it was sufficient to raise an issue for the determination of a jury, and the court committed error in giving a peremptory instruction.

The judgment is reversed, and the cause remanded.